Delaware River Port Authority, Appellant, *v.*
Pennsylvania Public Utility Commission.

Argued May 3, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Morris Duane,* with him *Francis W. Sullivan,* and *Duane, Morris & Heckscher,* for Authority, appellant.

*Joseph I. Lewis,* Chief Counsel, with him *William A. Goichman,* Assistant Counsel, for Public Utility Commission, appellee.

*Ernest R. von Starck,* with him *Vincent P. McDevitt, Samuel Graff Miller, Robert P. Garbarino,* and *Morgan, Lewis & Bockius,* for electric company, intervenor, appellee.

OPINION BY MR. JUSTICE COHEN, June 28, 1962:

The subject matter of this appeal is the relocation costs incurred by the Philadelphia Electric Company (Company) in moving its electric utility lines from one part of a public highway to another part to make way for the construction of certain approaches to the Walt Whitman Bridge connecting Philadelphia with New Jersey.

In 1960, appellant, the Delaware River Port Authority (Authority) filed a complaint in the Commonwealth court against appellee, the Pennsylvania Public Utility Commission (Commission) seeking the court to (1) enjoin it from "claiming any jurisdiction or power to hold hearings or take any other action that would certify or award costs against [Authority]" and (2) "grant such other relief" as the court may deem equitable. Company was permitted to intervene. The lower court denied plaintiff's motion for judgment on the pleadings and dismissed the complaint. It also directed the Commission to proceed to "certify the actual costs involved in these proceedings and to allocate

the same as directed by the Pennsylvania Superior Court in its opinion in 180 Pa. Superior Ct. 315." This appeal by Authority followed.

The history surrounding this appeal is pertinent. In 1954, pursuant to the provisions of section 409 of the Public Utility Law of 1937, May 28, P. L. 1053, as amended, 66 PS §1179, Authority applied to Commission for permission to construct portions of the Walt Whitman Bridge over railroad tracks located on Delaware Avenue in Philadelphia. Incident to this request, Authority requested Commission to allocate the costs and expenses arising from the construction in question, under section 411 of the statute, 66 PS §1181.

In response to this application, Commission approved the crossing and found as one of the costs the expenses of Company in moving its utility lines to accommodate the construction, which expenses were ordered to be paid by Authority. Authority appealed this order to the Superior Court which in *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 315, 119 A. 2d 855 (1956), affirmed Commission's actions. This Court subsequently denied Authority's application for allocatur. Thereupon, the order became final and there remained only for Commission to proceed to determine the precise amount of the costs in question upon completion of the necessary relocation by Company.

Subsequently, in separate and distinct proceedings involving the same parties, relocation costs of Company in other crossings of the bridge were imposed against Authority by Commission. On appeal, the Superior Court once again affirmed Commission.[1] However, in this case, we granted Authority's application for allocatur and subsequently reversed the Superior Court.

---

[1] *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 184 Pa. Superior Ct. 280, 133 A. 2d 853 (1957).

In our opinion, *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 393 Pa. 639, 145 A. 2d 172 (1958), we held that section 411 of the Public Utility Law, 66 PS §1181, does not entitle Commission to allocate costs incurred by privately owned utilities, other than transportation utilities, since there was no legislative intent to change the common law rule that a non-transportation public utility has no property interest in a public highway.

Thereupon, Authority filed in this court a petition for a writ of prohibition, seeking to prevent Commission from certifying the costs of Company which were involved in the earlier decision of the Superior Court at 180 Pa. Superior Ct. 315, and to declare the order of the Commission therein involved null and void. This petition was denied.

Subsequently, Company petitioned Commission for a certification of the costs in the earlier proceedings. Authority moved before Commission that this petition be dismissed which motion Commission denied. Thereupon, Authority brought this present equity action to enjoin Commission from proceeding further in that matter, citing as authority the decision of this court in the later proceedings decided at 393 Pa. 639. Authority now appeals from the lower court's unfavorable action.

The issue before us resolves itself down to a determination of the res judicata effect of the Superior Court's opinion in the first proceeding reported at 180 Pa. Superior Ct. 315. Appellant contends that the impact of our opinion in 393 Pa. 639 was to establish the law of the case and thereby render the earlier adjudication null and void. We cannot agree with this position.

In asserting this proposition, appellant misconstrues the meaning of the doctrine of "the law of the case." This court has on several occasions defined this

concept in the following language: " 'The doctrine of "the law of the case" is that, when an appellate court has considered and decided a question submitted to it upon appeal, it will not, *upon a subsequent appeal on another phase of the same case,* reverse its previous ruling even though convinced that it was erroneous.' " (Emphasis supplied). *Burke v. Pittsburgh Limestone Corporation,* 375 Pa. 390, 394, 100 A. 2d 595 (1953); *Reamer's Estate,* 331 Pa. 117, 200 A. 2d 35 (1938).

An essential requirement of the doctrine is that it be applied only "upon a subsequent appeal on another phase of the same case." It is here that appellant falls into error. The second set of proceedings between Authority and Commission which are reported in 184 Pa. Superior Ct. 280, and 393 Pa. 639 are entirely separate and distinct from the litigation reported in 180 Pa. Superior Ct. 315 which gave rise to the present appeal.

It is pure coincidence that the two cases involve the exact same parties and arise out of the construction of the same bridge (although they concern relocation of lines on different streets). For the sake of clarity in deciding the real issue involved, it would have been preferable had the second case arisen from the construction of another bridge, or had Authority challenged the assessment of relocation costs incident to the moving of gas lines rather than, once again, electric lines. However, we do not pick the litigants or situations to suit our convenience. At all stages, the two cases have been handled separately—relocation of lines on different streets are involved; there were separate hearings before Commission at different times; there were different appeals in separate years. At no time, until after the rendition of our opinion in 393 Pa. 639 did appellant treat the second set of proceedings as being the same as the first.

When, in 1956, the Superior Court held in 180 Pa. Superior Ct. 315 that Commission could assess Author-

ity with relocation costs of Company and this Court refused the application for allocatur, there was a final determination by a disinterested appellate tribunal which had the effect of res judicata on all matters arising out of the same case. Under the doctrine of res judicata, a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies, on the same cause of action. Identity of the thing sued for, the causes of action, of the parties to the action, and of the quality or capacity of the parties suing or sued, is essential to the application of the doctrine. *Burke v. Pittsburgh Limestone Corporation,* supra (375 Pa. at 395).

Appellant contends, however, that our opinion in 393 Pa. 639 vitiates the conclusiveness of the Superior Court's determination in the prior proceedings at 180 Pa. Superior Ct. 315, since the Superior Court there had misinterpreted the applicable law and had based its decision in erroneous principles. Such a conclusion is improper.

As recently as *Burke v. Pittsburgh Limestone Corporation,* supra, Justice ARNOLD, quoting from and commenting on section 1, Restatement, Judgments (1942) had this to say: " 'Where a reasonable opportunity has been afforded to the parties to litigate a claim before a court which has jurisdiction over the parties and the cause of action, and the court has finally decided the controversy, the interests of the State and of the parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again by them.' The comment, b, states: 'The principle stated in this Section is applicable although the judgment was erroneous, either on the law or on the facts. The unsuccessful party has an opportunity to attack the judgment by steps properly taken in the action in which the judgment is rendered. He may take proceedings in the trial court to have the

judgment set aside. He may take proceedings in an appellate court to have it reversed. He cannot, however, in a subsequent action relitigate the matters determined by the judgment.' *Thus any mistakes in the original judgment are wrapped up in that judgment and cannot be inquired into thereafter.*" (Emphasis supplied).

This is in conformance with other decisions of this court that the mere fact that an appellate court later decides in another case that the principle of law announced or established in an earlier litigation, since terminated, is improper, does not vitiate the effect of the earlier case.

In *Strauss v. W. H. Strauss & Company, Inc.,* 328 Pa. 72, 194 Atl. 905 (1937) this Court held that a final deficiency judgment entered prior to the determination by this Court that the Deficiency Judgment Act was unconstitutional, was nonetheless binding and enforceable. Said the court: "But, jurisdiction having attached, and no appeal having been taken . . . the judgment of the [lower] court as to the amount remaining due is not impaired by the fact that it was based upon a statute subsequently declared to be unconstitutional. . . . '[T]he subject matter of the issue in that suit is res judicata. . . .' " See generally *Metzger's Estate,* 242 Pa. 69, 88 Atl. 915 (1913); *Clarendon V.F.W. Home Association Liquor License Case,* 167 Pa. Superior Ct. 44, 75 A. 2d 171 (1950).

In regard to this question, two sections of Restatement, Judgments (1942) are relevant. Complementing section 1, quoted above, section 126 states as follows: "(2) Although a judgment is erroneous and inequitable, equitable relief will not be granted to a party thereto on the sole ground that . . . (e) the judgment was the result of a mistake of law or of fact by the court. . . ." Moreover, in 50 C.J.S. Judgments §704 (1947), it is noted: "Where a valid judgment has been rendered by a court having jurisdiction of the parties

and the subject matter, and it has not been set aside or corrected on appeal or in some other timely and appropriate proceeding, its conclusiveness is not impaired by the fact that it is irregular or erroneous."

Accordingly, the authorities are in accord with the well-established law in this Commonwealth that a subsequent decision revealing a prior decision to be in error does not preclude the application of the doctrine of res judicata. In the words of Judge SWOPE of the court below: "In the case at hand, nothing was left to be done under the decision in 180 Pa. Superior Ct. 315, except to render certain the amount of costs of the Electric Company's relocation. The liability of Delaware River Port Authority to pay those costs was rendered certain by the decision. It remained only for the Commission to carry out the court's judgment with regard to such liability, which it proposes to do. The fact that in a later case, the Supreme Court of Pennsylvania has held that the Commission may not in fact assess costs of this description may not be relied upon now to attack collaterally the decision in the earlier case and in effect render it a nullity. The earlier decision was allowed to become final and although it could not now be relied upon to control a current or future case, it is nevertheless binding on all the parties and the Commission in the particular instance with which it was concerned, and must be carried through."

Having decided that the determination of the Superior Court in 180 Pa. Superior Ct. 315, was res judicata and that Commission may assess costs arising out of the relocation of the electric lines against Authority, we will not dwell at length on appellant's other arguments.

We note, however, that Authority misinterprets our decision in 393 Pa. 639, by stating that it holds that Commission does not have jurisdiction to allocate the costs at issue in these proceedings (i.e., non-transportation public utility relocation costs). This is an errone-

ous interpretation of that opinion. The case actually holds that the Commission does not have the *power* to allocate such costs. "Jurisdiction" and "power" are not interchangeable although judges and lawyers often confuse them—*Hellertown Borough Referendum Case,* 354 Pa. 255, 47 A. 2d 273 (1946). Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

In section 411 of the Public Utility Law, 66 PS §1181, the legislature gave Commission general jurisdiction over the allocation of costs resulting from the construction of crossings. No other body entertains jurisdiction over this subject matter. Indeed, it illbehooves Authority to challenge Commission's jurisdiction since Authority was the party invoking it.

We said in *Delaware River Port Authority v. Pennsylvania P. U. C.,* 393 Pa. 639, however, that the Commission had *no power* to award relocation costs to nontransportation utilities since the legislature did not specifically abrogate the common law doctrine that non-transportation public utilities are not entitled to relocation costs. Commission's error arose from incorrectly allocating these particular expenses upon Authority without necessary legislative permission. It did not arise because the Commission lacked the jurisdiction per se to make allocations but rather, because the Commission improperly interpreted the relevant statutory provisions in imposing the costs in question herein and thereby exceeded its power.

Accordingly, the lower court acted properly in dismissing appellant's complaint and in denying the relief sought.

Decree affirmed at appellant's costs.

Mr. Chief Justice BELL dissents.