**Augustus RIEDEL, Appellant,**

v.

**The HUMAN RELATIONS COMMISSION OF the CITY OF READING and Millicent Ferrer.**

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 1997.

Decided Dec. 19, 1997.

Kathleen D. Dautrick, Reading, for appellant.

Louis M. Shucker, Reading, for appellee.

Before KELLEY and LEADBETTER, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge. [1]

Augustus Riedel (Riedel) appeals from the order of the Court of Common Pleas of Berks County which dismissed his appeal from the order of the Reading Human Relations Commission (Commission), fining Riedel $500, and ordering him to write a letter of apology to his former neighbor, Millicent Ferrer (Ferrer). We reverse.

From September, 1992 through November, 1994, Ferrer, who is Puerto Rican, and her two young children, were tenants in an apartment in a row home in the City of Reading, located directly above the first floor apartment of Riedel, another tenant, who is white. Beginning in the fall of 1993, Riedel and Ferrer became unfriendly and Ferrer filed a complaint with the Commission in March, 1994, alleging that Riedel was harassing her and her children by making derogatory, obscene and hostile remarks to them.

At the hearing before the Commission in January, 1996, Riedel's proscribed conduct was graphically described by Ferrer's friend, Joseph Santana:

> I personally heard Mr. Reidel (sic) address Mrs. Ferrer as an F-ing Puerto Rican whore on many occasions, you need to get your fucking ass out of here. This is America. This is not a place for you. Go back to where you came from.

(R.R. 46a).

It is also undisputed that Riedel used this vulgar language only when he was in his own apartment, provoked by what he considered excessive noise made by Ferrer's children, and that he delivered these ill-tempered tirades in a loud voice, accompanied by pounding on the walls and ceiling. The Commission found that Riedel's conduct was of a threatening nature, designed to force Ferrer to move from her apartment; that Ferrer was intimidated by such conduct; and that on more than one occasion Ferrer and her children temporarily vacated their apartment in fear of Riedel, and finally moved in November, 1994.

The Commission found that Riedel had engaged in an unlawful discriminatory housing practice by interfering with Ferrer's right to the quiet enjoyment of her apartment in violation of Section 155.07(1) of Reading Human Relation Ordinance, which makes it unlawful:

> [f]or any person to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged

---

1. This case was reassigned to the author on November 4, 1997.

any other person in the exercise or enjoyment of any right granted or protected by this Ordinance.

A "discriminatory housing practice" is defined by Section 155.03(f) of the Ordinance as "an act that is either unlawful under the provisions of this Ordinance or is unlawful under section 804, 805, 806, or 818 of the Federal Fair Housing Act [42 U.S.C. §§ 3604, 3605, 3606, or 3617] or Section 955 or 955(h) of the Pennsylvania Human Relations Act." [2]

Neither the provisions of the Ordinance governing discriminatory housing practices, nor the referenced sections of the Pennsylvania Human Relations Act (Act), specifically address the right to enjoy or reside in housing free from the discriminatory conduct of others once the actual housing accommodation has been procured. Rather, the other provisions of the Ordinance, as well as the Act, detail discriminatory conduct which is prohibited during the search, application, financing, sale or rental of housing.

Similarly, the enumerated sections of the Federal Fair Housing Act prohibit discrimination in the context of listing, financing, sale or rental of housing. *See* 42 U.S.C. §§ 3603–3606.

Unlike the Pennsylvania Human Relations Act, the Fair Housing Act contains a provision, 42 U.S.C. § 3617, virtually identical to § 155.07(1) of the Ordinance. By incorporating this provision of the Fair Housing Act in its Ordinance, the City of Reading purports to confer upon its Human Relations Commission not only the power to outlaw discriminatory housing practices engaged in by persons in the business of listing, financing, sale or rental of housing, but also to outlaw discriminatory conduct engaged in by any person designed to interfere with the quiet enjoyment of another person's residence.

The Commission says "[t]here are few, if any, Pennsylvania cases discussing this section. Presumably, this is because there is no analog to Section 155.07(1) in the Pennsylvania Human Relations Act...." Commission's

Brief, p. 6. However, since Section 155.07(1) of the Ordinance merely incorporated its federal analog in the Fair Housing Act, 42 U.S.C. § 3617, the Commission urges us to adopt the federal court's interpretation of the federal act as the proper interpretation of this section of its ordinance.

The Commission relies on the case of *Stackhouse v. DeSitter*, 620 F.Supp. 208 (N.D.Ill.1985), where the court held that fire-bombing the automobile of a black resident of Cicero, Illinois, by a white resident with the intention of driving him out of a previously all white neighborhood was a discriminatory housing practice in violation of 42 U.S.C. § 3617.

The Commission is claiming powers under its ordinance in excess of the powers conferred on the Pennsylvania Human Relations Commission by the legislature.

We begin with the proposition that as a non-sovereign, a third class city has only those powers expressly given it by the Legislature.

*Washington Arbitration Case*, 436 Pa. 168, 177, 259 A.2d 437, 442 (1969).

In authorizing the establishment of local human relations commissions, the legislature said this:

The legislative bodies of political subdivisions shall have the authority to grant to local commissions powers and duties similar to those now exercised by the Pennsylvania Human Relations Commission under the provisions of this act.

Section 12.1 of the Act, added by Section 3 of the Act of January 24, 1966, P.L. (1965) 1523, *as amended*, 43 P.S. § 962.1(d).

In the case of *City of Pittsburgh Commission on Human Relations v. MacBeth*, 37 Pa.Cmwlth. 636, 391 A.2d 1109, 1110 (1978), in construing this provision, this Court said:

Thus, it is clear from this language of the Act that the General Assembly, while desirous of extending to municipalities the right to establish local commissions, did not intend to extend to local commissions powers or duties above and beyond those possessed by the Pennsylvania Human Relations Commission.

**2.** Section 5 of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amend-* ed, 43 P.S. § 955.

The Commonwealth of Pennsylvania has sanctions which may not be available at the federal level. Firebombing an automobile is arson, a third degree felony, (18 Pa.C.S. § 3301(d)), and ethnic intimidation accompanying such conduct is a separate felony of the second degree, (18 Pa.C.S. § 2710). Quarreling neighbors may be guilty of lesser offenses, such as harassment, (18 Pa.C.S. § 2708), or disorderly conduct, (18 Pa.C.S. § 5503).

Section 3 of the Act declares that the opportunity for an individual to obtain all the accommodations, advantages, facilities and privileges of any housing accommodation without discrimination because of race, color, ancestry or national origin is a civil right enforceable as set forth in the Act. 43 P.S. § 953. The Act does not include among unlawful discriminatory practices the interference with a person's quiet enjoyment of his apartment, even if accompanied by racial epithets. Riedel engaged in rude, even boorish conduct, but he did not engage in a discriminatory and unlawful housing practice as defined by the Act.

### ORDER

NOW, December 19, 1997, the order of the Court of Common Pleas in the above-captioned matter is reversed.

LEADBETTER, J., dissents.