ALLEGHENY ENERGY SUPPLY
COMPANY, LLC

v.

TOWNSHIP OF BLAINE

v.

Michael Vacca, James Jackson, Ken-
neth H. Smith, Debra Stefko-
vich and Gail Wadzita.

Appeal of Township of Blaine.

Allegheny Energy Supply
Company, LLC

v.

Township of Blaine

v.

Michael Vacca, James Jackson, Ken-
neth Smith, Debra Stefkovich and
Gail Wadzita, Appellants.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 7, 2003.
Decided Aug. 13, 2003.

Robert N. Clark, Washington, for appellants.

Bernard P. Matthews, Jr., Greensburg, for appellee, Allegheny Energy Supply Co., LLC.

Dale J. Gregg, Washington, for appellees, M. Vacca, et al.

BEFORE: LEADBETTER, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

LEADBETTER, Judge.

Blaine Township (Township) and interested township residents, as intervenors, appeal from the order of the Court of Common Pleas of Washington County (common pleas), which directed the Township to permit Allegheny Energy Supply Company (Allegheny Energy) to construct an electric generating facility as Allegheny Energy proposed in its curative amendment application.[1] We affirm.

In July of 2001, Allegheny Energy, the grantee of an option to purchase 323 acres in Blaine Township's A–1 Agricultural District,[2] challenged the Township's zoning ordinance on the ground that it did not permit an electric generating facility in any zoning district. In conjunction with this validity challenge, Allegheny Energy submitted a curative amendment pursuant to Section 609.1 of the Municipalities Planning Code (MPC).[3] The proposed amendment added to the uses permitted in the A 1 Agricultural District the operation of an electric generating facility subject to compliance with all applicable federal, state and local regulations. In conjunction with the proposed amendment, Allegheny Energy requested that the Supervisors approve "the construction and operation of [the facility] on the subject property in accor-

---

1. The Township and the intervenors filed separate appeals and these have been consolidated in our court.

2. The acreage subject to Allegheny Energy's option to purchase is part of a very large tract totaling 3900 acres. The larger tract was sold by West Penn Power Company and Allegheny Pittsburgh Coal Company to the Washington County Council on Economic Development pursuant to an agreement that reserved certain acreage some of which is subject to Allegheny Energy's option.

3. The Municipalities Planning Code is the Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§ 10101–11202. Section 609.1 was added by the Act of June 1, 1972, P.L. 333, as amended, 53 P.S. § 10609.1.

dance with the plans and specifications that have been submitted by Allegheny Energy Supply Company, subject to specific and detailed construction plans which shall be supplied to the building permit officer," *i.e.*, site specific relief. Accompanying the curative amendment, Allegheny Energy submitted a property layout drawing, topographical maps and a conceptual drawing of the proposed plant.

Prior to conducting a hearing on the validity of the ordinance and amendment, the Supervisors submitted the matter to the Township Planning Commission and, in order to allow additional time for review, Allegheny Energy agreed to extend the statutorily prescribed time for hearing and decision. During this period, the Township prepared an alternative ordinance amendment, which permitted the electric generating facility in the A–1 District as a conditional use and set forth a detailed list of regulations. Following the Planning Commission's review of the proposed amendments on October 10, 2001, the Supervisors conducted a public hearing on October 15. At the hearing, Allegheny Energy's business development manager, Doug Stone, described in some detail the nature of the proposed plant, its location on the site and general design, its operation, the construction process and the various measures required under state and federal regulations and those that would be voluntarily undertaken to limit environmental impacts and mitigate public harm. Thereafter, following additional discussion of the applicant's and the Township's proposed curative amendments at the regular Supervisors' meeting on October 19, Allegheny Energy responded in a letter, dated November 1, that it did not agree to the alternative amendment. Instead, Allegheny Energy submitted for the Supervisors

approval a resolution granting site specific relief subject to those conditions Allegheny Energy found reasonable.

The Supervisors did not pass the proposed resolution. Rather, on November 19, at the regular meeting, the Supervisors adopted the Township's alternative amendment.[4] Allegheny Energy appealed to common pleas, contending that inasmuch as the Township conceded that the ordinance failed to provide for electric generating facilities, the Township was legally obligated to permit Allegheny Energy to use its property as proposed, *i.e.*, site specific relief. Owners of land located near Allegheny Energy's proposed facility sought and obtained permission to intervene. Intervenors requested that common pleas remand to the Supervisors or permit the introduction of additional evidence. After denying this request, common pleas granted site specific relief in a detailed order permitting construction and operation of the proposed facility subject to substantially the same conditions to which Allegheny Energy had agreed to comply in its November 1 letter. Thereafter, the Township and intervenors filed the present appeal.

On appeal, the Township and intervenors contend that (1) Allegheny Energy failed to demonstrate its actual interest and ability to develop the site for an electric generating facility because it failed to provide sufficiently specific land development plans showing the feasibility of using the site as proposed and because it lacks financial ability to complete the project. The Township contends that (2) site specific relief is inappropriate where the zoning ordinance does not explicitly exclude electric generating facilities but merely fails to permit this use and, in any event,

---

4. A zoning validity challenge is deemed denied when "the governing body adopts another curative amendment which is unacceptable to the landowner." Section 916.1(f)(3) of the MPC, *as amended*, 53 P.S. § 10916.1(f)(3).

common pleas granted site specific relief without imposing sufficient conditions. The intervenors contend that (3) notice of the public hearing did not comply with Section 610 of the MPC, *as amended*, 53 P.S. § 10610, and did not apprise them of Allegheny Energy's request for site specific relief. In addition, both appellants contend that (4) common pleas erred in refusing either to remand or accept additional evidence from the intervenors. Both appellants also contend that (5) common pleas erred in ruling on the merits of the land use appeal immediately after denying the intervenors' request to submit additional evidence without first hearing additional argument or providing time for the submission of briefs. Each of these contentions lacks merit.

*Standing to challenge ordinance*

■ Intervenors initially challenge Allegheny Energy's standing to pursue zoning relief. As a general matter, Allegheny Energy has standing to challenge the ordinance by virtue of its status as the landowner. Section 107 of the MPC defines a "landowner," in pertinent part, as "the legal or beneficial owner or owners of land including the holder of an option or contract to purchase (whether or not such option or contract is subject to any condition)." See Section 107, *as amended*, 53 P.S. § 10107. Pursuant to Section 609.1(a) of the MPC, "[a] landowner who desires to challenge on substantive grounds the validity of a zoning ordinance or map or any provision thereof, which prohibits or restricts the use or development of land in which he has an interest may submit a curative amendment to the governing body with a written request that his challenge

and proposed amendment be heard and decided as provided in section 916.1." 53 P.S. § 10609.1(a). As the grantee of the option to purchase the acreage on which it proposes to construct and operate the facility, Allegheny Energy clearly qualifies as a landowner.

Nonetheless, intervenors challenge standing for two reasons. First, intervenors argue that since the hearing before the Board, Allegheny Energy has become financially unable to proceed with construction of the facility and, therefore, lacks standing to proceed any further with its request for zoning relief. In support of this contention, intervenors point to public reports in a newspaper and a financial reporting service indicating that Allegheny Energy has suffered financial difficulties after filing its zoning appeal in common pleas. Second, intervenors argue that, in submitting inadequate plans and specifications regarding the proposed facility, Allegheny Energy never sufficiently established a substantial, direct and immediate interest in developing the site.[5]

■ Intervenors' first argument interjects an issue that is irrelevant by way of information that is not a part of the record. For both these reasons, the argument fails. Most importantly, we note that the financial health of Allegheny Energy is not a relevant factor in standing. In arguing that Allegheny Energy's financial condition calls into question the feasibility of the development, intervenors confuse the concern with whether the particular site can feasibly accommodate the development, which is relevant in determining the availability of site specific

---

**5.** Allegheny Energy argues that intervenors waived any objection to standing because they did not assert this objection at the earliest opportunity. Our review of the record indicates that, while intervenors made no explicit objection based on standing during the Board hearing where they were not represented by counsel, they did object at the first opportunity in common pleas to the inadequacy of Allegheny Energy's development plans and to its alleged lack of financial ability to develop the site. For this reason, we do not consider intervenors' present contentions as waived.

relief, with the irrelevant question as to whether a particular landowner can feasibly foot the bill for the proposed development. The proper focus regarding the feasibility of development is limited to whether the land can reasonably accommodate the proposed development. This inquiry is not relevant to determining whether an applicant has standing to challenge the zoning regulations. Standing is determined by the applicant's rights in the property.

The second argument, regarding the adequacy of the plans submitted, is equally unavailing. The MPC contemplates that plans submitted in support of a curative amendment will not be developed in full detail. Section 1006–A [6] provides, in pertinent part, as follows:

(e) The fact that the plans and other materials are not in a form or are not accompanied by other submissions which are required for final approval of the development or use in question or for the issuance of permits shall not prevent the court from granting the definitive relief authorized. The court may act upon preliminary or sketch plans by framing its decree to take into account the need for further submissions before final approval is granted.

53 P.S. § 11006–A.

In support of their contention that Allegheny Energy's development plans are deficient, intervenors cite *Appeal of Miller*, 87 Pa.Cmwlth. 254, 487 A.2d 448 (1985). In *Miller*, the landowner seeking a curative amendment failed to provide adequate "plans and other materials describing the use or development proposed ... in lieu of the use or development permitted by the challenged ordinance," as required under then applicable Section 1004 of the MPC, (Section 1004 was repealed by the 1988 amendments and replaced by the addition of Section 916.1).[7] In *Miller*, we said:

Unless a landowner demonstrates not only that he intends to develop his land in a manner currently prohibited, but also that it would be feasible for him to do so at some point in the near future, the alleged harm has been shown to be neither direct nor immediate. Thus, a mere token compliance with Section 1004 is inadequate to confer standing on a challenger. Although plans need not be in the form required for preliminary or final approval, at least some physical description of the terrain, as well as a tentative layout of the structures to be erected and of proposed points of access to public roads, is necessary to determine whether the land in question is suited to the proposed development.

*Id.* at 450. We further pointed out in *Miller* that under some circumstances deficiencies in the original submission documents can be cured by oral testimony. *Id.*

---

**6.** Section 1006–A was added by the Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 11006–A.

**7.** Section 916.1 was added by the act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 10916.1. Section 916.1 incorporates the same requirement to submit proposed plans imposed prior to 1988 under Section 1004. The present requirement is, in pertinent part, as follows:

Where the landowner desires to challenge the validity of such ordinance and elects to proceed by curative amendment under section 609.1, his application to the governing body shall contain ... the plans and explanatory materials describing the use or development proposed by the landowner in lieu of the use or development permitted by the challenged ordinance or map. Such plans or other materials shall not be required to meet the standards prescribed for preliminary, tentative or final plan approval or for the issuance of a permit, so long as they provide reasonable notice of the proposed use or development and a sufficient basis for evaluating the challenged ordinance or map in light thereof.

53 P.S. § 10916.1(c)(1).

However, the court ruled that the Millers, having testified to nothing more than their intent to develop at a density of five to six residential units per acre, failed to provide sufficient supplementary information establishing anything more than mere intent to develop at some time in the future. *Id.* *See also Connelly, Inc. v. Board of Supervisors of Highland Township*, 19 Pa. Cmwlth. 110, 340 A.2d 597 (1975) (stating that "[a] mere statement of intent to develop at some time in the future is not sufficient to give a landowner standing under section 1004").

■ In the present case, Allegheny Energy's plans and explanatory materials in conjunction with the more detailed information provided during the hearing amount to far more than the meager presentation found inadequate in *Miller.* In its documentation and testimony, Allegheny Energy demonstrates very specific plans as to the location of the facility, its design, its access to surrounding roads, and its access to natural gas, cooling water and electric distribution lines. Following the detailed presentation by Doug Stone at the public hearing, the residents received answers to their questions about noise, odors, air quality assessment, vehicular access and the expected traffic increase, and the plans for buffering and screening neighboring properties from a view of the plant. In addition to the testimony by Stone, Allegheny Energy's manager of environmental permitting and reporting, two environmental specialists, director of engineering and technical support, construction coordinator, manager of communications and manager of local governmental affairs attended the hearing and answered questions. The record leaves no doubt as to Allegheny Energy's immediate intent to develop the site for the proposed facility and the company's investment in initial planning therefore. Inasmuch as the plans need not be at the level of detail required for land development approval or building permit issuance, the information provided by Allegheny Energy adequately establishes the company's substantial, direct and immediate interest in obtaining zoning relief.

*Site specific relief*

■ In challenging the validity of the ordinance, Allegheny Energy bore the burden of proving that the ordinance excluded electric generating facilities. *See Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 418, 502 A.2d 585, 589–90 (1985); *Ellick v. Board of Supervisors of Worcester Township*, 17 Pa. Cmwlth. 404, 333 A.2d 239, 243–44 (1975). Where an ordinance fails to provide for a legitimate use and the municipality fails or is unable to adequately justify that exclusion by demonstrating its substantial relationship to the promotion of the public health, safety and welfare, that ordinance is not a rational exercise of the zoning power and is therefore invalid. *Fernley,* 509 Pa. at 418, 502 A.2d at 587 (1985). A landowner who prevails in challenging an ordinance on this ground is entitled to site specific relief. *Id.* at 421, 502 A.2d at 589. *See also Casey v. Zoning Hearing Bd. of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974); *Appeal of Miller and Son Paving, Inc.*, 161 Pa.Cmwlth. 138, 636 A.2d 274, 277 (1993).

■ There is no merit in the Township's contention that site specific relief is not called for here because the ordinance merely fails to provide for the use rather than specifically prohibiting it. Neither the MPC nor our caselaw makes such a distinction. In the present case, the Township never disputed Allegheny Energy's assertion that an electric generating facility is not a permitted use under the ordinance and the Township did not attempt to justify this exclusion. Rather, it conceded that the ordinance was invalid on this ground and proceeded to cure the

invalidity by enactment of a new amendment other than that proposed by Allegheny Energy. This cure is entirely within the legislative discretion of the Supervisors, and its validity is not now before this court. *Ellick*, 333 A.2d at 246. However, that prospective cure of the invalidity does not obviate the Supervisor's duty to accord site specific relief to a landowner who challenges the old ordinance before the new is enacted. In *Appeal of Miller and Son Paving, Inc.*, our court explained:

> [A] ruling that a zoning ordinance totally excludes a legitimate use is not to be enforced prospectively but must apply to the party who successfully litigated that ordinance's invalidity. As the Pennsylvania Supreme Court stated in *H.R. Miller Company v. Board of Supervisors*, 529 Pa. 478, 605 A.2d 321 (1992), "[w]here the cause of an ordinance's invalidity is a *de jure* exclusion of a legitimate use, as in *Casey*, . . . the sole remedy is to allow the use somewhere in the municipality, and equity dictates that this opportunity fall to the successful litigant/landowner." *Id.* at 485, 605 A.2d 321, 605 A.2d at 324–25.

636 A.2d at 277. Therefore, faced with ample evidence that Allegheny Energy can safely build and operate an electric generating facility at the proposed site, common pleas appropriately directed the site specific relief it is authorized to provide under Section 1006–A of the MPC.

*Hearing notice*

■ Intervenors argue that notice of the curative amendment hearing was defective because the Township failed to indicate that Allegheny Energy sought site specific relief. They rely in this argument upon Section 610 of the MPC, which directs that the notice (that a proposed zoning amendment will be considered) indicate the time and place for the hearing and the place within the municipality where copies of the proposed ordinance or amendment may be examined, and include either the text of the ordinance or amendment or a brief summary setting forth the provisions in detail. If the full text is not published, a copy of the full text must be provided to the newspaper in which notice is published and a copy must be filed in the county law library or other county office designated by the county commissioners. In the present case, Blaine Township published notice indicating the date and time on which the Board would consider the enactment of a curative amendment that would allow electric generating facilities as a use in the A–1 Agricultural District. The Township further provided the title and a description of the amendment along with the statement that the full text was available for the public's examination in the Township's community building during normal business hours. This noticed satisfied the requirements of Section 610.[8]

---

8. We note that Section 916.1, which applies particularly to validity challenges, directs that public notice of the hearing shall include notice that the validity of the ordinance is in question and shall give the place where and the times when a copy of the request, including plans, explanatory material or proposed amendments may be examined by the public. See 53 P.S. § 10916.1(e). With respect to the requirements in Section 916.1(e), the record does not establish that the published notice complied with these requirements. However, intervenors never asserted, before the Board of Supervisors or common pleas, any objection regarding lack of compliance with Section 916.1(e) and they do not rely upon, nor even mention, Section 916.1(e) in their brief to our court. For this reason, they waived any argument concerning Section 916.1. *See Mack v. Zoning Hearing Bd. of Plainfield Township*, 126 Pa.Cmwlth. 80, 558 A.2d 616, 618 (1989) (stating that failure to assert that property not posted with notice of special exception hearing before ZHB as required by Section 908 of MPC constituted waiver of that issue). Moreover, we may not raise such an error *sua sponte. Riedel v. Human Relations*

Moreover, intervenors attended the hearing and were afforded an adequate opportunity to assert their challenge to site suitability and to question the likely development impacts from the proposed use. When the hearing convened, Allegheny Energy's detailed presentation regarding specific plans for the site made it readily apparent to the intervenors present that site specific relief was at issue. Demonstrating that they understood this, the residents questioned Allegheny Energy's witnesses regarding the suitability of the site and the likely impacts from the facility.

*Refusal to remand or take additional evidence*

 Intervenors contend that without taking additional evidence common pleas lacked sufficient information to determine that the site is suitable for construction and operation of the proposed facility without unreasonable detrimental impact on the Township and, in particular, on the near-by properties. Section 1005–A of the MPC provides that common pleas may receive additional evidence if the moving party shows "that proper consideration of the land use appeal requires the presentation of additional evidence." See 53 P.S. § 11005–A.[9] "The question of whether the presentation of additional evidence is to be permitted under this provision is a matter within the sound discretion of [common pleas]." *Eastern Consol. and Distrib. Serv., Inc. v. Board of Comm'rs of Hampden Township,* 701 A.2d 621, 624 (Pa. Cmwlth.1997). "A court of common pleas faces compulsion to hear additional evidence in a zoning case only where the party seeking the hearing demonstrates that the record is incomplete because the party was denied an opportunity to be heard fully, or because relevant testimony was offered and excluded." *Id.* In the

present case, in light of the ample evidence from Allegheny Energy and the full opportunity afforded to the neighboring residents to question Allegheny Energy's witnesses and present opposing evidence, common pleas did not abuse its discretion in refusing to take additional evidence.

In their brief to this court, intervenors assert that they should have been afforded an opportunity to submit expert testimony on the historic and natural resources at the site, the potential impact on surrounding wells and water supply and the impact from increased noise and traffic. The difficulty with this argument is that common pleas considered the issues of noise, traffic, water supply and wells, and environmental impacts and imposed reasonable conditions to deal with them. Much of the proposed additional "evidence" is speculative in that it had not been developed, and so was not specifically proffered either to the supervisors or to common pleas. That which was identified fell far short of the standard necessary to preclude site specific relief, *i.e.,* proof of conditions or aspects of the development plan that render the project impossible to safely execute. *Cf. Appeal of Harbucks, Inc.,* 126 Pa.Cmwlth. 591, 560 A.2d 851, 855–56 (1989) (ruling that the site for a proposed quarry was unsuitable because the soil and ground water was already dangerously contaminated with heavy metals from prior use of the site for metals reclamation operation). Despite an adequate opportunity to do so, neither the Township nor the intervenors proffered evidence that rebutted Allegheny Energy's proof of site suitability, nor showed common pleas' conditions to be inadequate.

*Merits ruling without additional oral argument or briefs*

 Finally, common pleas did not err in granting relief without first obtain-

*Comm'n. of Reading,* 559 Pa. 34, 38–39, 739 A.2d 121, 123–24 (1999).

**9.** Section 1005–A was added by the Act of December 21, 1988, P.L. 1329.

ing briefs or hearing argument. In general, briefs and argument are for the benefit of the court and the court may exercise its discretion to dispense with argument and dispose of the case based on the record. *Gerace v. Holmes Protection of Philadelphia,* 357 Pa.Super. 467, 516 A.2d 354, 358–59 (1986). In the present case, the parties had briefed and orally argued the intervenors' motion to remand or take additional evidence. After denying that motion, common pleas ruled on the merits without additional oral or written argument. We discern no abuse of discretion in doing so. In briefing and presumably in arguing their respective positions on the motion to remand, the parties essentially covered all of the issues currently raised in their briefs to our court. In particular, intervenors' brief to common pleas asserts that Allegheny Energy did not present sufficiently specific site plans to the Board of Supervisors, public notice of the hearing was inadequate to apprise intervenors that site specific relief was requested and, therefore, additional evidence is required to determine the appropriate site specific relief. In light of the ample record created before the Board of Supervisors and the adequate development of the legal arguments, common pleas did not err in proceeding to decide the merits.

Accordingly, we affirm.

### ORDER

AND NOW, this 13th day of August, 2003, the order of the Court of Common Pleas of Washington County in the above captioned matters are hereby AFFIRMED.