**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| DOMUS, INC., | : | No. 54 MAP 2020 |
| | : | |
| Appellant | : | Appeal from the Order of Superior |
| | : | Court at No. 1547 MDA 2018 dated |
| | : | November 26, 2019, Reargument |
| v. | : | Denied February 3, 2020, Reversing |
| | : | the Order of the Lackawanna Court |
| | : | of Common Pleas, Civil Division, at |
| SIGNATURE BUILDING SYSTEMS OF PA, | : | No. 2015 Civil 4440 dated August 2, |
| LLC, | : | 2018. |
| | : | |
| Appellee | : | ARGUED:  March 10, 2021 |

## OPINION

**JUSTICE DOUGHERTY**  **DECIDED:  June 22, 2021**

We granted discretionary review to consider whether the claim that a foreign judgment was not authenticated under the Uniform Enforcement of Foreign Judgments Act (UEFJA), 42 Pa.C.S. §4306, implicates the subject matter jurisdiction of Pennsylvania's courts of common pleas and therefore cannot be waived.  We hold the failure to authenticate a foreign judgment under UEFJA does not deprive the court of common pleas of subject matter jurisdiction.  Accordingly, we reverse the Superior Court's decision to the contrary and remand for further proceedings consistent with this opinion.

## I.

Appellant Domus, Inc. (Domus) was involved in a residential construction project at Dartmouth College in Hanover, New Hampshire.  As part of its work on the project, Domus entered into a contract with appellee Signature Building Systems of PA, LLC

(Signature). The contract called for Signature to provide modular residential units for the project. In addition, Domus separately contracted with PFS Corporation (PFS) to inspect and certify the condition of the units provided by Signature.

Domus filed suit against PFS in New Hampshire on October 17, 2011, alleging the units provided by Signature were defective. PFS filed a motion to add Signature as a defendant via a third-party complaint, which was granted on March 29, 2012. On April 12, 2012, PFS filed an affidavit of service certifying its third-party complaint had been served on Signature. On June 21, 2012, the New Hampshire trial court entered a default notice against Signature with respect to PFS's third-party complaint. On November 28, 2012, counsel for Signature entered appearances in the New Hampshire case, but subsequently withdrew those appearances on January 28, 2013.

On April 19, 2013, Domus filed a motion to file a third-party complaint against Signature in the New Hampshire case, which was granted on May 7, 2013. On July 2, 2013, Domus filed a return of service indicating the third-party complaint had been served on Signature. On July 29, 2013, the New Hampshire trial court declined to issue a default notice with respect to Domus's third-party complaint against Signature. Instead, on September 11, 2013, the New Hampshire trial court ordered Domus to serve Signature again. In addition, the court ordered Signature to file an appearance with the court by December 3, 2013, or be considered in default. On November 5, 2013, Domus filed an affidavit of service certifying its third-party complaint had been served on Signature.

On December 10, 2013, the New Hampshire trial court entered a notice of default against Signature due to its failure to file an appearance. Following a hearing on February

24, 2014, the court entered a final judgment against Signature in the amount of $293,081, plus 2.1% interest accruing from September 11, 2013.

On July 16, 2015, Domus filed in the Court of Common Pleas of Lackawanna County, Pennsylvania, a "Praecipe for Entry of Appearance, Transfer of Judgment, Assessment of Damages and Verification of Addresses, and Non Military Service." Attached to the praecipe were copies of the docket entries and the final judgment against Signature in the New Hampshire proceeding.

The New Hampshire judgment attached to the praecipe filed by Domus was not authenticated pursuant to UEFJA, which provides in pertinent part:

> A copy of any foreign judgment including the docket entries incidental thereto **authenticated in accordance with act of Congress or this title** may be filed in the office of the clerk of any court of common pleas of this Commonwealth. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth. A judgment so filed shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.

42 Pa.C.S. §4306(b) (emphasis added).

The federal law regarding authentication in this context states:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

28 U.S.C. §1738. And, the corresponding Pennsylvania law provides:

An official record kept within the United States, or any state, district, commonwealth, territory, insular possession thereof, or the Panama Canal Zone, the Trust Territory of the Pacific Islands, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by a judge of a court of record having jurisdiction in the governmental unit in which the record is kept, authenticated by the seal of the court, or by any public officer having a seal of office and having official duties in the governmental unit in which the record is kept, authenticated by the seal of his office.

42 Pa.C.S. §5328(a). Accordingly, regardless of whether a party is proceeding under federal or Pennsylvania law, authentication under UEFJA requires that a "certificate" accompany the foreign judgment. Federal law requires a certificate from a judge of the court in which the judgment was entered that the attestation of the clerk is in proper form. Pennsylvania law mandates a certificate from a judge or other officer in the originating jurisdiction as to custody of the record. Here, it is undisputed there was no certificate of any kind included with the praecipe filed by Domus.

On August 10, 2015, Signature filed in the Lackawanna County Court of Common Pleas a motion to strike foreign judgment. Signature's motion did not include a specific objection to Domus's failure to file a certificate.[1] Domus filed a timely answer in opposition

---

[1] The Superior Court nevertheless concluded Signature raised the lack of a certificate in paragraph 11 of its motion to strike. *See Domus, Inc. v. Signature Building Systems of PA, LLC*, 224 A.3d 31, 36 (Pa. Super. 2019) (observing Domus's argument Signature waived its authentication objection "appears to have overlooked mentions of this issue in Signature's earlier motions practice before the Pennsylvania trial court"), *citing* Motion to Strike Foreign Judgment, 08/10/15 at ¶11 (Motion to Strike). There, Signature argued UEFJA "requires inter al [sic]: the filing of an Affidavit by respondent or his attorneys' affidavit setting judgment creditor. In addition, such affidavit must include a statement that the foreign judgment is valid, enforceable and unsatisfied." Motion to

to Signature's motion to strike. Thereafter, there was extensive discovery and briefing regarding the validity of the New Hampshire judgment, and a hearing was held in July of 2018. Ultimately, on August 2, 2018, the court denied Signature's motion to strike, concluding "the due process notice requirements" with respect to the New Hampshire proceedings "have been satisfied." Order, 08/02/18 at ¶17.

Signature filed a timely notice of appeal. On October 18, 2018, the court of common pleas ordered Signature to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Signature complied with this order, but its Rule 1925(b) statement did not raise the claim that the New Hampshire judgment was not properly authenticated under section 4306(b) of UEFJA.[2]

Signature's Superior Court brief likewise omitted from the "statement of questions involved" the issue of whether the New Hampshire judgment had been properly authenticated under section 4306(b) of UEFJA. Instead, Signature listed only the issues of whether it received notice of the hearing on damages in New Hampshire, and whether Domus filed a sufficient affidavit in accordance with section 4306(c)(1):

> 1. Whether the trial court erred in failing to strike the entry of a foreign judgment from the state of New Hampshire when the

---

Strike at ¶11, *citing* 42 Pa.C.S. §4306. However, this paragraph of Signature's motion to strike actually challenged Domus's compliance with 42 Pa.C.S. §4306(c)(1) ("At the time of the filing of the foreign judgment, the judgment creditor or his attorney shall make and file with the office of the clerk of the court of common pleas an affidavit setting forth the name and last known post office address of the judgment debtor, and the judgment creditor. In addition, such affidavit shall include a statement that the foreign judgment is valid, enforceable and unsatisfied."). It did not specifically challenge Domus's failure to comply with the authentication requirement of section 4306(b).

[2] The sole argument regarding UEFJA in the 1925(b) statement concerned an exhibit to Domus's answer to Signature's motion to strike the foreign judgment rather than the judgment itself. *See* Statement of Errors Complained of on Appeal at 5.

docket entries show no notice to appellant of a trial assessing damages?

Suggested answer: YES

2. Whether the trial court erred in failing to strike the foreign judgment entered from deeds in my state [sic] of New Hampshire when there is an insufficient affidavit filed at the time the judgment was transferred?

Suggested answer: YES

Appellant's Brief in Superior Court at 2. However, in the body of its Superior Court brief, Signature argued "[t]he judgement itself has not been authenticated as required by §4306." *Id.* at 10; *see also id.* at 3 ("[T]he judgement should be stricken since it was not certified as required by §4306 of the Act under either of the two methods permitted: In accordance with an Act of Congress; or, in accordance of [sic] the Statues [sic] of Pennsylvania.").

The Superior Court reversed the common pleas court's decision and struck the judgment against Signature in a published opinion. Bypassing the only two issues raised in Signature's statement of the questions involved, the panel addressed Signature's contention in the body of its brief that Domus failed to provide a properly authenticated judgment under section 4306(b) of UEFJA. Initially, the Superior Court considered Domus's arguments that this issue was waived. As noted *infra* at n.1, the panel disagreed with Domus's assertion the claim was not raised in the court of common pleas, concluding instead the issue was included in Signature's motion to strike the foreign judgment. However, the panel opined "Domus **is** correct in observing that Signature neglected to include this issue in its Rule 1925(b) statement." *Domus*, 224 A.3d at 36 (emphasis in original). While acknowledging this omission would normally result in waiver pursuant to

Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."), the panel declined to find waiver here. The Superior Court reasoned the issue of a properly authenticated foreign judgment "is one of jurisdictional gravity" under its precedent. *Id.* at 36.

Specifically, the panel noted that in *Ward v. Price*, 814 A.2d 262 (Pa. Super. 2002), the Superior Court held "[s]ince [Ward] did not file an authenticated copy of the judgment of record, the common pleas court was without jurisdiction to enforce the purported judgment entered in Maryland." *Ward*, 814 A.2d at 264. The panel recognized the holding in *Ward* "did not explicitly utilize the term 'subject matter jurisdiction'" but nonetheless "readily discern[ed] that this issue 'involves the competency of a court to hear and decide the type of controversy before it.'" *Domus*, 224 A.3d at 36, *quoting Cobbs v. SEPTA*, 985 A.2d 249, 254-55 (Pa. Super. 2009). In addition, the panel emphasized, "[o]ur case law interpreting the UEFJA also states that 'a foreign judgment entered without jurisdiction is a nullity' and, thus, void." *Id.*, *quoting Comm. Capital Funding, Inc. v. Franklin Square Hosp.*, 620 A.2d 1154, 1156 n.2 (Pa. Super. 1993). The panel further noted the Superior Court has "long held that 'a litigant may seek to strike a void judgment at any time.'" *Id.*, *quoting Oswald v. WB Pub. Square Assocs., LLC*, 80 A.3d 790, 793 n.2 (Pa. Super. 2013)). In light of this case law, the panel concluded Signature's claim the New Hampshire judgment was not properly authenticated under UEFJA "speaks to the subject matter jurisdiction of the trial court to hear this controversy in the first instance," and is therefore "not subject to waiver." *Id.*

Turning to the merits, the panel recounted the statutory requirements for authentication of a foreign judgment under federal and Pennsylvania law, and observed

the commonality between them is that they both require a separate certificate to accompany the judgment being filed in Pennsylvania. *See id.* at 36-37. The panel opined that while it was unclear whether Domus purported to proceed under state or federal law, it was ultimately irrelevant because no certificate of any sort was attached to the praecipe Domus filed in the Lackawanna Court of Common Pleas. *See id.* at 37. Relying again on *Ward*, the panel held the requirements of UEFJA are not discretionary and must be strictly followed. *See id.* at 38. Thus, the panel found "Domus'[s] failure to attach a certification pursuant to either §1738 or §5328(a) undermines its attempts to authenticate the New Hampshire default judgment pursuant to . . . UEFJA[,]" and "[a]s a result of this deficiency, the Pennsylvania trial court lacked jurisdiction from the inception of Domus'[s] efforts to enforce the New Hampshire judgment in Pennsylvania." *Id.* "Therefore," the panel concluded, "the trial court committed an error of law in not striking the foreign judgment because a fatal defect appears upon the face of the record." *Id.* at 39.

Judge Strassburger filed a concurring opinion expressing "grave doubts" about the panel majority's determination that the lack of a certification under UEFJA implicates subject matter jurisdiction and therefore cannot be waived. *Id.* (Strassburger, J., concurring). He expressed the view the defect can be remedied, akin to a pleading that is not verified properly in accordance with Pa.R.Civ.P. 1024. *See id.* Nevertheless, he joined the majority opinion based on *In re Opening of Ballot Boxes, Montour County*, 718 A.2d 774 (Pa. 1998). In *Ballot Boxes*, he noted, this Court "concluded that because the Election Code expressly required recount petitions to be verified, 'a recount petition not verified in accordance with the statutory requirements does not properly invoke the jurisdiction of the common pleas court and should be dismissed.'" *Id.*, *quoting Ballot*

*Boxes*, 718 A.2d at 777. Judge Strassburger reasoned that because UEFJA expressly requires authentication, this case presents a "similar issue" to the one in *Ballot Boxes*, obliging him to join the majority in striking the judgment entered below. *Id.*

## II.

We granted Domus's petition for allowance of appeal, limited to the following single issue, which we rephrased for clarity: "Did the Superior Court err in holding the failure to authenticate a foreign judgment pursuant to the requirements of the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. §4306, deprives a trial court of subject matter jurisdiction such that a challenge to that failure may not be waived?" *Domus, Inc. v. Signature Building Systems of PA, LLC*, 239 A.3d 5 (Pa. 2020) (*per curiam*). The question of subject matter jurisdiction "is purely one of law," and thus "our standard of review is *de novo,* and our scope of review is plenary." *Commonwealth v. Bethea*, 828 A.2d 1066, 1071 n.5 (Pa. 2003).

Domus argues its failure to authenticate the New Hampshire judgment by filing the certificate required under UEFJA did not deprive the Lackawanna Court of Common Pleas of subject matter jurisdiction. It maintains there is a distinction between subject matter jurisdiction and power. Subject matter jurisdiction, Domus notes, involves "'the competency of the court to determine controversies of the general class to which the case presented for consideration belongs.'" Appellant's Brief at 17, *quoting Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008). Domus asserts that "'[p]ower, on the other hand, means the ability of a decision-making body to order or effect a certain result.'" *Id.*, *quoting Riedel v. Human Relations Comm'n*, 739 A.2d 121, 124 (Pa. 1999). It contends UEFJA is completely silent regarding jurisdiction. It submits the plain language of UEFJA

makes clear the courts of common pleas may hear all matters concerning foreign judgments. *See id.* at 20. Domus insists UEFJA's authentication requirements are quintessentially technical and procedural. Therefore, according to Domus, the failure to authenticate a judgment simply renders a court of common pleas without power to grant relief in the particular case, and does not render the trial court "unable 'to enter upon the inquiry' of the 'general class to which the case presented for its consideration belonged[.]'" *Id.* at 21-22, *quoting Witney v. City of Lebanon*, 85 A.2d 106, 108 (Pa. 1952).

Domus additionally argues construction of a uniform law like UEFJA requires consideration of how sister state courts have interpreted the law. It submits that virtually all of the courts in other jurisdictions to consider the issue have held the lack of authentication under the statute does not limit a court's competency to hear a case, but merely impairs its power to grant relief in a particular matter. *See id.* at 25-28 (collecting cases). These precedents from around the country, Domus contends, are owed great deference. Domus asserts the Superior Court should have looked to these cases in interpreting UEFJA, not *Ballot Boxes*, which it deems "inapposite and highly distinguishable Pennsylvania Election Code case law." *Id.* at 29.

Domus also posits several negative policy implications of the Superior Court's decision. Specifically, it argues "the Superior Court's approach of looking to legal analogies peculiar to Pennsylvania election law or other insular jurisprudence could easily be extrapolated to the almost sixty Uniform Laws now extant in our Commonwealth." *Id.* at 30-32 (listing uniform laws). In addition, Domus contends the Superior Court's opinion will permit debtors to undo technically unauthenticated foreign judgments long after the fact based on brand new and previously unraised arguments. And, Domus insists, if

applied across the board to all uniform laws, the Superior Court's decision will open the courthouse doors to numerous *post hoc* challenges to judgments, overwhelming the court system and squandering finite judicial resources. Finally, Domus argues the Superior Court decision likely violates the full faith and credit clause of the United States Constitution by failing to give exacting effect to the New Hampshire judgment.

Signature responds "[a]uthentication as required by §4306 is essential to subject matter jurisdiction." Appellee's Brief at 4. Signature argues *School Stationers Corp. v. PSH Enters.*, 45 Pa. D. & C. 3d 144 (C.P. Montgomery, 1987), *Webb v. Consumer Auto Leasing, Ltd.*, 340 A.2d 865 (Pa. Super. 1975), *Ward*, and *Griggs v. Gibson*, 754 P.2d 783 (Colo. App. 1988), which is cited in *Ward*, each so hold. Moreover, Signature insists that under *Ballot Boxes*, the lack of proper authentication is not a curable defect. Signature further contends declining to construe authentication as a jurisdictional requirement would "rewrite" section 4306 and constitute "an unwarranted invasion of the judiciary into the legislative field." *Id.* at 14. Signature disputes Domus's "convoluted argument of equating the general power of a court to hear a matter with subject matter jurisdiction[.]" *Id.* at 15. According to Signature, "it is not only permissible, but in fact mandatory for a [c]ourt to at least consider a matter before it under the general principles of its authority, in order to be able to co[n]sider an initial controversy as to whether it has jurisdiction to decide the matter on its merits." *Id.* at 16. Signature asserts this Court's jurisprudence regarding UEFJA does not need to be consistent with case law from other states.[3]

---

[3] Signature devotes a significant portion of its brief to arguing the New Hampshire proceedings violated its due process rights. *See* Appellee's Brief at 5-11. Because these

In reply, Domus argues neither *School Stationers*, *Webb*, nor *Ward* "elevate[d] authentication/transfer deficiencies to the level of 'jurisdictional.'" Appellant's Reply Brief at 5. Domus also reiterates its position that *Ballot Boxes*, involving the question of whether a trial court had jurisdiction to vacate its prior order for a recount of ballots, is irrelevant to construing UEFJA. Further, it asserts Signature's argument about "rewriting" UEFJA has it backwards; it would be rewriting the statute, Domus maintains, to add a jurisdictional requirement to section 4306 that is not included in its language. Domus contends "Signature offers no rationale for its novel position that a court can 'act upon a matter' without having jurisdiction or, stated differently, have 'a little bit of subject matter jurisdiction.'" *Id.* at 9-10.

**III.**

Upon careful consideration of the parties' arguments and the governing law, we agree with Domus that the failure to authenticate a foreign judgment under UEFJA does not implicate the subject matter jurisdiction of the court of common pleas. "The assessment of 'whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs.'" *Assouline v. Reynolds*, 219 A.3d 1131, 1137 (Pa. 2019), *quoting Beneficial Consumer Disc. Co. v. Vukman*, 77 A.3d 547, 550 (Pa. 2013). The pertinent consideration is whether the court could "'enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case.'" *County of Allegheny v. WCAB (Parker)*, 177 A.3d 864, 872 n.10 (Pa.

arguments are beyond the scope of the Court's limited *allocatur* grant, we need not detail them here.

2018), *quoting Heath v. WCAB (Pa. Bd. of Probation and Parole)*, 860 A.2d 25, 29 (Pa. 2004). Subject matter jurisdiction is "not synonymous" with a tribunal's power to act, although the terms "are often used interchangeably by judges and litigants alike." *In re Melograne*, 812 A.2d 1164, 1167 (Pa. 2002). As this Court has explained:

> Jurisdiction and power are not interchangeable although judges and lawyers often confuse them[.] Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

*Riedel*, 739 A.2d at 124 (internal citation omitted), *quoting Delaware River Port Auth. v. Pa. Pub. Util. Comm'n*, 182 A.2d 682, 686 (Pa. 1962). "[S]ubject matter jurisdiction is a question that is not waivable and may be raised by a court on its own motion." *Heath*, 860 A.2d at 29. By contrast, "[c]laims relating to a tribunal's power are, unlike claims of subject matter jurisdiction, waivable." *Melograne*, 812 A.2d at 1167.

Here, the absence of proper authentication under UEFJA does not render the court of common pleas incompetent to determine controversies in the general class to which this case belongs, *i.e.*, actions to enforce foreign judgments. Under our Constitution and per statute, the courts of common pleas have unlimited original jurisdiction of all actions, except where otherwise provided by law. *See* PA. CONST. art. V, §5 ("There shall be one court of common pleas for each judicial district (a) having such divisions and consisting of such number of judges as shall be provided by law, one of whom shall be the president judge; and (b) having unlimited original jurisdiction in all cases except as may otherwise be provided by law."); 42 Pa.C.S. §931(a) ("Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule . . . vested in another court of

this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas."). The effectively unlimited subject matter jurisdiction of the courts of common pleas to consider all actions clearly encompasses actions to enforce foreign judgments.

Moreover, UEFJA does not make authentication a jurisdictional requirement. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a). "The plain language of the statute is the best indicator of the legislature's intent." *Commonwealth v. Chesapeake Energy Corp.*, 247 A.3d 934, 942 (Pa. 2021). In particular, "statutes purporting to limit a court's jurisdiction must be strictly construed[.]" *In re Jones & Laughlin Steel Corp.*, 412 A.2d 1099, 1102 (Pa. 1980), *citing* 1 Pa.C.S. §1928(b)(7).

The language of UEFJA includes no reference whatsoever to jurisdiction. Given the statute's silence on the issue, we conclude section 4306 presents no bar to the virtually unlimited subject matter jurisdiction of the courts of common pleas, including jurisdiction of foreign judgment enforcement actions. Where the language of a statute makes no reference to a decrease in the court's subject matter jurisdiction, such a diminution cannot simply be inferred. *See Armstrong Sch. Dist. v. Armstrong Educ. Ass'n*, 595 A.2d 1139, 1144 (Pa. 1991) ("The language of section 1003 makes no reference to a decrease in the equity court's jurisdiction and such a diminution may not be implied [sic]."). Had the legislature intended UEFJA's authentication requirement to have jurisdictional implications, it would have referred to jurisdiction explicitly, as it has in other statutes. *See, e.g.*, 23 Pa.C.S. §5421(a) ("a court of this Commonwealth has jurisdiction

to make an initial child custody determination only if" certain conditions are met); 42 Pa.C.S. §1515(a) ("Except as otherwise prescribed by general rule . . . , magisterial district judges shall, under procedures prescribed by general rule, have jurisdiction of all of the following matters . . . ."); 42 Pa.C.S. §761(a) ("The Commonwealth Court shall have original jurisdiction of all [of the following] civil actions or proceedings . . . .").

Our conclusion that authentication under UEFJA does not implicate subject matter jurisdiction is supported by consideration of decisions from other states that have adopted the uniform law, an analysis required by our rules of statutory construction. *See* 1 Pa.C.S. §1927 ("Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them."); *Sternlicht v. Sternlicht*, 876 A.2d 904, 911 n.13 (Pa. 2005) ("[I]n construing a uniform law, this Court must consider the decisions of our sister states who have adopted and interpreted such uniform law and must afford these decisions great deference."). While "decisions of our sister states are certainly not binding on this Court, it is important in construing a uniform act to recognize how those states have interpreted similar provisions." *Koken v. Reliance Ins. Co.*, 893 A.2d 70, 83 (Pa. 2006).

Appellate courts in a number of other states have held authentication problems under UEFJA, or other technical defects under the act, do not have jurisdictional consequences. *See, e.g.*, *Concannon v. Hampton*, 584 P.2d 218, 220-221 (Okla. 1978) ("Authentication is evidentiary, not jurisdictional. Defendant has therefore waived any objections to the lack of authentication and may not raise that issue for the first time on appeal."); *Holley v. Holley*, 568 S.W.2d 487, 489 (Ark. 1978) ("A failure to strictly comply with the [authentication] requirements of s 29-803 as to subsequent entries did not totally

deprive the trial court of jurisdiction of the subject matter in this case where appellee was personally served and responded."); *Snyder v. Nelson*, 331 N.W.2d 252, 255 (Neb. 1983) ("It seems to us the reasoning of the Arkansas court [in *Holley*] is sound."); *State ex rel. Ruessman v. Flanagan*, 605 N.E.2d 31, 34-35 (Ohio 1992) ("Relator also argues that the court is deprived of subject-matter jurisdiction because of several alleged defects in the petition filed below (*e.g.*, lack of a proper affidavit and proper authentication) and because the judgment sought to be enforced is not final. To the extent these alleged defects relate to the procedures for proving a foreign decree under the UEFJA, we find relator's arguments to be without merit."); *Nix v. Cassidy*, 899 So.2d 998, 1001 (Ala. Civ. App. 2004) ("The judgment creditor contends that her failure to file an affidavit averring that the Georgia judgment was 'valid, enforceable, and unsatisfied' does not give rise to a jurisdictional defect in the circuit court; rather, she contends, it amounts, in effect, to a technical failure that does not defeat the circuit court's jurisdiction. We agree."); *Tanner v. McCarthy*, 274 S.W.3d 311, 316 (Tex. Civ. App. 2008) ("Although the filing of the affidavit at the time that the authenticated foreign judgment is filed is a specific requirement of the UEFJA, it does not follow that the failure to comply with this statutory provision presents a jurisdictional, rather than a procedural, bar to the domestication of a foreign judgment under that act. Even when compliance with a statutory requirement is a mandatory condition for pursuing an action under a particular statutory scheme, this does not mean that compliance with the requirement is jurisdictional."). These multiple precedents from around the country provide additional persuasive authority for what our own law dictates: although the failure to authenticate a foreign judgment under UEFJA

may impair the ultimate power of the court of common pleas to enforce the judgment, it does not deprive the court of subject matter jurisdiction.

Signature points us to the decision of the Colorado Court of Appeals in *Griggs*, *see* Appellee's Brief at 13-14, but that case does not support its position. In *Griggs*, the plaintiff-creditor sought to enforce a foreign judgment under Colorado's version of UEFJA. However, the plaintiff did not file an authenticated copy of the foreign judgment as required under the act. At a hearing in the trial court, the garnishee objected to the proceedings on this basis. "At that point, plaintiff tendered a document to the court that he claimed was a copy of the judgment involved." *Griggs*, 754 P.2d at 785. "Over [the] garnishee's objection that the document was not in proper form, the trial court apparently accepted the document as an authenticated copy of the judgment involved and proceeded with the hearing." *Id.* Ultimately, the trial court entered a judgment of $10,000 in favor of the plaintiff and against the garnishee. On appeal, however, the Colorado appellate court reversed, holding that "since [the] plaintiff failed to file an authenticated copy of the foreign judgment when he filed his other documents, the court had no authority to enter any orders or to issue any writs designed to enforce that judgment." *Id.*

Thus, *Griggs* merely stands for the proposition that the failure to authenticate a foreign judgment under UEFJA deprives the trial court of the authority to order relief in the particular case before it. *Griggs* did not hold, as Signature would have it, that the lack of proper authentication completely divests the court of subject matter jurisdiction to consider the general class of foreign judgment enforcement actions. *See Commonwealth v. Morris*, 771 A.2d 721, 737 (Pa. 2001) ("We have explained that authority and jurisdiction are not synonymous[.]").

We are not persuaded by the Superior Court's decision below elevating the procedural requirement of authentication to a jurisdictional mandate. The panel's reliance on *Ward* is misplaced. In that case, the plaintiff-judgment creditor Ward instituted an action in the court of common pleas to enforce a foreign judgment from Maryland under UEFJA. However, "no copy of the Maryland [j]udgment itself was included" with Ward's filings. *Ward*, 814 A.2d at 263 (emphasis, internal quotation, and citation omitted). The defendants filed a motion to strike the foreign judgment based on Ward's "fail[ure] to attach a certified copy of the original judgment to the initial filings[.]" *Id.* (internal quotation and citation omitted). The court of common pleas granted the motion to strike, and Ward appealed. The Superior Court affirmed, holding that "[s]ince [Ward] did not file an authenticated copy of the judgment of record, the common pleas court was without jurisdiction to enforce the purported judgment entered in Maryland." *Id.* at 264.

It is apparent that in using the term "jurisdiction," the *Ward* court meant to refer to the power or authority of the court of common pleas to grant relief in the particular case, not subject matter jurisdiction. This construction of *Ward* follows ineluctably from three facts. First, as noted above, use of the term in this manner, while imprecise, is not uncommon among the bench and bar alike. *See Melograne*, 812 A.2d at 1167; *Riedel*, 739 A.2d at 124; *Delaware River Port Auth.*, 182 A.2d at 686; *see also Fort Bend County, Texas v. Davis*, 139 S.Ct. 1843, 1848 n.4 (2019) ("Courts, including this Court, . . . have more than occasionally [mis]used the term 'jurisdictional' to refer to nonjurisdictional prescriptions.") (quotation marks omitted, alterations in original). Second, in *Ward* the lack of authentication was raised in the court of common pleas, and the party forwarding the issue on appeal was the appellee. Thus, *Ward* did not present a circumstance where

the absence of authentication was cognizable only if it implicated subject matter jurisdiction or was otherwise non-waivable. Third, *Ward* did not merely fail to "explicitly utilize the term 'subject matter jurisdiction.'" *Domus*, 224 A.3d at 36. Rather, *Ward* explicitly clarified that it was **not** referring to subject matter jurisdiction. The *Ward* court did not simply state the court of common pleas lacked jurisdiction; *Ward* opined the court of common pleas was "without jurisdiction **to enforce the purported judgment entered in Maryland**." *Ward*, 814 A.2d at 264 (emphasis added). With this additional language, the *Ward* court expressly elucidated it was referring to the trial court's ability to order relief in the specific case before it, not the court's subject matter jurisdiction over foreign judgment enforcement actions generally. *Ward*, like *Griggs*, holds nothing more than that the lack of proper authentication under UEFJA may strip the trial court of the power to enforce a foreign judgment in a specific case.[4]

The panel's selective quotation from *Commonwealth Capital Funding* likewise fails to support its decision below. In that case, the appellee obtained a default judgment against the appellant in Texas, and then purported to transfer the judgment to Pennsylvania under UEFJA. The appellant "filed a petition to strike/vacate or open the foreign judgment contending that it had insufficient contacts with the Texas forum and that the exercise of personal jurisdiction over [the appellant] was contrary to Texas law[,]" which was denied by the trial court. *Comm. Capital Funding*, 620 A.2d at 1156. In a footnoted sentence only partially quoted by the panel below, the Superior Court stated: "Because a foreign judgment entered without jurisdiction is a nullity, thus void, it must be vacated and not opened, because to do otherwise would be to permit the trial court to

---

[4] To the extent *Ward* may be construed otherwise, it is disapproved.

proceed further in an action against a defendant over whom personal jurisdiction had not been obtained." *Id.* at 1156 n.2. Hence, *Commonwealth Capital Funding* held, quite irrelevantly for purposes of this appeal, that a foreign judgment entered without personal jurisdiction in the foreign jurisdiction is unenforceable in Pennsylvania. The Superior Court in *Commonwealth Capital Funding* did not even consider the question before us of whether the failure to authenticate a judgment properly entered in a foreign jurisdiction carries jurisdictional consequences for the court of common pleas, much less answer this question in the affirmative.

Also unconvincing is the panel's argument below asserting it has long been the law that "'a litigant may seek to strike a void judgment at any time.'" *Domus*, 224 A.3d at 36, *quoting Oswald*, 80 A.3d at 793 n.2. A judgment is void if the issuing court lacked jurisdiction of the subject matter or the person. *See Strasburg Scooters, LLC v. Strasburg Rail Road, Inc.*, 210 A.3d 1064, 1067 (Pa. Super. 2019) ("[I]t is 'well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void[.]'"), *quoting Com. ex rel. Howard v. Howard*, 10 A.2d 779, 781 (Pa. Super. 1940); *see also M & P Mgmt., L.P. v. Williams*, 937 A.2d 398, 398 (Pa. 2007) ("A void judgment arises when the court lacks subject matter jurisdiction[.]"). The failure to authenticate a foreign judgment in Pennsylvania does not retroactively strip the foreign issuing court of subject matter or personal jurisdiction.

Finally, we respectfully disagree with the conclusion of the concurring judge below that the jurisdictional question here is controlled by our decision in *Ballot Boxes*. In that case, involving a contested election for the office of District Justice in Montour County, the appellee lost the initial vote and filed petitions for a recount. The court of common

pleas ordered a recount, which resulted in a tie vote. Lots were then cast to determine the winner, and the appellee was declared the victor. Thereafter, the appellant filed a petition to dismiss or set aside the recount proceedings, arguing "that the recount petitions filed by [the appellee] were defective in that the signatures of the electors who signed them were not verified." *Ballot Boxes*, 718 A.2d at 775. The court of common pleas struck its recount order and declared the casting of lots a nullity. The Commonwealth Court reversed.

This Court, however, held "the common pleas court ruled correctly in striking the recount order." *Id.* In so holding, we addressed the Commonwealth Court's "suggest[ion] that there is conflicting authority on whether lack of verification is a fatal defect that deprives the common pleas court of jurisdiction over the recount petitions, or whether it is a defect that can be amended." *Id.* at 777. We concluded there was no such conflict, and that "under prior election laws and the present Election Code, it has been consistently held for more than eighty years that a recount petition not verified in accordance with the statutory requirements does not properly invoke the jurisdiction of the common pleas court and should be dismissed." *Id.*

Notably, while *Ballot Boxes* indicated the lack of verification issue was not waivable and could be raised *sua sponte*, *see id.* ("[t]he fact that the issue was raised in an irregular manner is of no moment, since the court could have both raised the issue and decided it in the same fashion *sua sponte*"), the opinion did not specifically hold the absence of a verified recount petition deprives the court of common pleas of **subject matter** jurisdiction. Indeed, the Court characterized the question it addressed as whether the lack of verification "deprives the common pleas court of jurisdiction **over the recount**

[J-14-2021] - 21

**petitions**[.]" *Id.* (emphasis added). It is not at all clear that by its use of "jurisdiction" in this context, the *Ballot Boxes* Court meant "subject matter jurisdiction." "Jurisdiction, it has been observed, is a word of many, too many, meanings[.]" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (quotation marks omitted).

In any event, we find *Ballot Boxes* readily distinguishable. That case applied Pennsylvania's state-specific Election Code, not the uniform law UEFJA, which must be interpreted to achieve consistency with other jurisdictions, and which has repeatedly been construed elsewhere as not setting forth jurisdictional requirements. Moreover, the decision in *Ballot Boxes* was premised on Pennsylvania decisions "consistently h[o]ld[ing] for more than eighty years" that an unverified recount petition does not invoke the jurisdiction of the court of common pleas. *Ballot Boxes*, 718 A.2d at 777. Here, by contrast, there is no longstanding case law (indeed, no precedent at all) substantiating the Superior Court's elevation of UEFJA's authentication requirement to a jurisdictional mandate. We therefore reverse the Superior Court and hold the failure to authenticate a foreign judgment under UEFJA does not deprive the court of common pleas of subject matter jurisdiction.

**IV.**

Having concluded the failure to authenticate a foreign judgment pursuant to section 4306(b) of UEFJA does not implicate the subject matter jurisdiction of the court of common pleas, and therefore a claim alleging lack of authentication under that provision can be waived, the question then becomes whether there was a waiver here. We do not reach this issue in the present appeal, however, because we did not grant review on the specific question of whether Signature waived its claim the New Hampshire judgment was

not properly authenticated under UEFJA. As a general matter, we do not consider issues not encompassed within our grant of *allocatur*. *See Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1048 n.17 (Pa. 2019) ("Because this issue is not encompassed within our grant of *allocatur*, we do not consider it."). Moreover, we do not have the benefit of full briefing on the issue. While Domus argues waiver in its brief in this Court, *see* Appellant's Brief at 22-23, Signature does not respond, a point Domus emphasizes in its reply brief, *see* Appellant's Reply Brief at 13 ("Conspicuously absent from Signature's brief is any discussion regarding its failure to preserve an objection to Domus's lack of certification in connection with this appeal."). Under these circumstances, the proper remedy is remand to the Superior Court to consider whether Signature waived its claim of inadequate authentication. *See McKinley v. Commonwealth*, 769 A.2d 1153, 1163 n.16 (Pa. 2001) ("In light of the limitation upon the issues imposed by our order allowing appeal, briefing has not been provided covering the full continuum of pertinent issues; consequently, while it would be possible for this Court to presently undertake review of the dispositive questions, a remand is the better course.").[5]

---

[5] We recognize the panel majority below already indicated its position that Signature did not preserve the issue in its Rule 1925(b) statement. *See Domus*, 224 A.3d at 36. We nevertheless remand for further proceedings given that the panel's purported holding on the question was *dicta*, as it was not essential to its ultimate decision — held erroneous herein — that Domus's failure to authenticate the New Hampshire judgment deprived the court of common pleas of subject matter jurisdiction. *See Castellani v. Scranton Times, L.P.*, 124 A.3d 1229, 1243 n.11 (Pa. 2015) ("[D]icta is an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision. Dicta has no precedential value.") (quotation marks omitted).

The Superior Court's order is reversed, and the case is remanded to that court for proceedings consistent with this opinion. Jurisdiction is relinquished.

Chief Justice Baer and Justices Saylor, Todd, Donohue, Wecht and Mundy join the opinion.